MARSTILLER, J.
The Florida Department of Highway Safety and Motor Vehicles (“Department”) appeals a final judgment ruling that National Safety Commission, Inc., (“NSC”) may unilaterally renew its five-year contract with the Department to print and distribute the Florida Driver’s Handbook (“Handbook”). We reverse, for we conclude the contract language does not give NSC the right to mandate renewal.

Background

In 2004, the Department issued an Invitation to Negotiate (“ITN”) soliciting competitive proposals from vendors to print and distribute the Handbook at no cost to the state. This the Department did under the authority of chapter 283, Florida Statutes, and in keeping with state procurement procedures outlined in chapter 287, Florida Statutes. Chapter 283 permits state agencies to contract with private entities to print agfency-published materials. It also allows private publication of public information brochures, pamphlets, etc., when “the costs of publication or production will be borne in whole or in part by the vendor or the vendor agrees to provide additional compensation in return for the right of the vendor to select, sell, and place advertising that publicizes products or services related to and harmonious with the subject matter of the publication.” § 283.53(l)(a), Fla. Stat. (2004). The ITN specified that “The Contract shall be in effect for 5 years, with one (1) 5 year renewal option contingent upon satisfactory service, unless terminated earlier by the Department....” Further, the contract resulting from the ITN would give the selected vendor the exclusive right to publish and distribute the Handbook during the five-year term.
NSC is a Florida corporation that, according to its website, “is one of the nations’ [sic] leading providers of driver education services” and offers “a variety of online and limited classroom courses ... in all 50 states.” See The National Safety Commission, http://www.nationalsafety commission.com (last visited August 5, 2011). Its offerings include traffic school; driver’s education; and driver, motorcycle and commercial driver (CDL) training. See id. NSC was the only vendor to submit a proposal in response to the Department’s ITN. Its Best and Final Offer (“BAFO”) stated that, at an anticipated cost of $349,521.20, NSC would annually print and provide nearly 1.1 million copies of the Handbook,[1] with the option to provide an additional 750,000 copies each year to high school students. It would maintain a website for all handbooks, which consumers could directly access from the Department’s website by clicking on a text or graphic link thereon. NSC would place Department-approved advertisements both in the printed Handbook and on NSC’s handbook website. The BAFO stated, “NSC will print and provide all handbooks *300 for the 5-year contract period with an option to renew.”
On May 4, 2005, the parties executed a contract “governed by the terms and conditions set forth in ITN No. 002-05 with the exception of the terms submitted by the Contractor’s Best and Final Offer dated April 1, 2005.” As to the contract period and renewal option, the contract stated: “This contract shall begin on the 1st day of July, 2005 and shall terminate on the 30th day of June, 2010. There is one renewal option for a five (5) year period.” And, importing language from the BAFO, the contract also states that NSC “will print and provide all handbooks for the 5-year contract period with an option to renew.” By written amendment, the parties later extended the contract term to December 31, 2010.
Sometime after the contract began, the public learned that the lobbyist for NSC was married to the Department’s then executive director. Thus a cloud of suspicion about the propriety of the contract grew, and in 2008, Florida Providers for Traffic Safety, Inc., sued the Department and NSC to invalidate the contract.[2] In addition, a subsequent Department director discovered that NSC was marketing its products via unsolicited emails to teenagers who were required to provide their email addresses to obtain a Handbook. Moreover, because the advertisements appearing in the Handbook only marketed NSC’s LowestPriceTrafficSchool.com, the public perception was that the Department endorsed LowestPriceTrafficSchool.com and its driver education programs. Finally, the director wanted to move away from the “antiquated strategy” of distributing paper handbooks toward solely providing electronic handbooks. For these reasons, the director decided that although NSC was performing the contract satisfactorily, for policy and business reasons it would be in the State’s best interests not to renew the contract after the term ended.[3] By letter dated November 5, 2009, the director notified NSC of the Department’s intent not to renew. Six months later, NSC’s CEO wrote the director that NSC “is hereby exercising its option to renew the Contract for an additional five-year period.”
When the Department refused to execute the renewal, NSC sued seeking declaratory relief, specific performance and damages. Based on language in the contract elevating the BAFO terms over those in the ITN where they conflict, the trial court interpreted the BAFO as giving NSC the sole option to renew the contract. Further, the court found NSC “clearly possesses an unambiguous, unilateral right” to renew in the absence of unsatisfactory performance of its contractual responsibilities. The court granted NSC’s plea for specific performance, ordering the Department to “recognize and adhere to [NSC’s] valid exercise of its five-year renewal option and ... faithfully discharge its contractual obligations....”

*301
Analysis

We interpret the contract de novo[4] and conclude that the BAFO provision addressing the renewal option did not change, and thus supersede, the relevant ITN provision, nor does the language give NSC the unilateral right to renew the contract.
The renewal clauses at issue are as follows:
[From the ITN]
3.2 TERM OF CONTRACT: The Contract shall be in effect for 5 years, with one (1) 5 year renewal option contingent upon satisfactory service, unless terminated earlier by the Department.... [From the BAFO]
(1) NSC will print and provide all handbooks for the 5-year contract period with an option to renew.
[From the contract]
CONTRACT PERIOD: This contract shall begin on the 1st of July, 2005 and shall terminate on the 30th day of June, 2010 [extended by amendment to December 31, 2010]. There is one renewal option for a five (5) year period.
[[Image here]]
1. The Contractor will print and provide all handbooks for the 5-year contract period with an option to renew.
These provisions reflect no inconsistency between the ITN and the BAFO as to contract renewal. Rather, read together they allow either party to seek renewal of the contract. Indeed, the BAFO language makes clear the option is bilateral. Neither party can force the other into another five-year contract.
The renewal language is essentially the same as that in section 287.058(l)(f), Florida Statutes, which, this court held in Department of Corrections v. C & W Food Service, Inc., 765 So.2d 728, 730 (Fla. 1st DCA 2000), “authorizes the parties to renew a state procurement contract in subsequent years, but ... does not create a right to renewal.” Section 287.058(1) requires written agreements for competitively procured contractual services. It also provides that such agreements may contain “[a] provision specifying that the contract may be renewed for a period that may not exceed 3 years or the term of the original contract, whichever period is longer ... and specifying that renewals shall be contingent upon satisfactory performance evaluations by the agency .... ” § 287.058(l)(f), Fla. Stat. (2004). “The purpose of the statute is to exempt the parties from the competitive bidding process for a limited time if they are mutually satisfied with the agreement.” C & W Food Service, 765 So.2d at 730 (emphasis added). But “it does not guarantee any vendor the right to continue to do business with the state beyond the original term of the contract.” Id. Even if, as NSC argues, “no cost” publishing contracts authorized by section 283.53 already are exempt from the competitive procurement requirements of chapter 287 — an issue we need not address today — the point is that the contract language tracks statutory language requiring mutual agreement of the parties to renew a contractual services agreement.[5] The option to renew is not unilateral for either party.
We therefore reverse the final judgment on appeal and remand the cause for fur *302 ther proceedings consistent with this opinion.
REVERSED and REMANDED.
WETHERELL, J., concurs; VAN NORTWICK, J., dissents with opinion.

. English and Spanish versions of the "Official Florida Driver's Handbook,” the "Official Florida CDL Handbook” and the "Official Florida Motorcycle Handbook.”

. In January 2010, the Department entered into a Settlement Agreement providing that the Department would not renew the contract with NSC. The Department further agreed to use its best efforts to produce a Handbook without advertisements for driver education and improvement courses, notify all driver improvement providers of any competitive procurement for the 2011 Handbook, and seek necessary funding from the Legislature if the 2011 Handbook were produced in-house. The final judgment on appeal states "the Department has no objection to the voiding of the Settlement Agreement....”

. We note, as well, that under "Amendment No. 2” to the contract, executed in March 2008, the Department could not terminate the contract for convenience or in the best interests of the state — rights it had under the terms of the ITN.

. See Rose v. Steigleman, 32 So.3d 644, 645 (Fla. 1st DCA 2010).

. We note that the parties’ contract resulted from a competitive solicitation conducted according to section 287.057, whether or not the Department was required to do so. Having submitted itself to chapter 287 in order to win the contract, NSC should not now complain if chapter 287 governs the contract.